**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAURENSAU JOSEPH | : | |
| | : | |
| Appellant | : | No. 3090 EDA 2023 |

Appeal from the PCRA Order Entered November 8, 2023
In the Court of Common Pleas of Wayne County Criminal Division at
No(s):  CP-64-CR-0000092-1998

BEFORE:  DUBOW, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY DUBOW, J.:　　　　　　**FILED SEPTEMBER 25, 2024**

Appellant Laurensau Joseph appeals *pro se* from the November 8, 2023 order of the Philadelphia County Court of Common Pleas dismissing his petition filed on December 6, 2000, pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

**A.**

A previous panel of this Court summarized the relevant factual and procedural history as follows:

> In April of 1998, Appellant, then 24 years old, believed his former foster brother, Michael Smith, stole his necklace and vandalized his car.  They argued in [Smith]'s bedroom. [Smith] picked up a machete and Appellant pulled out a hand[-]gun and shot [Smith] in the face.  [Smith], bleeding profusely, dropped the machete and went downstairs.  Appellant followed and fired a second shot striking [him] in the forehead, immediately killing him.  The next day, Appellant went to the Pennsylvania State Police barracks and gave a 34-page statement admitting that he shot [Smith] twice.

***Commonwealth v. Joseph***, 2023 WL 2441945 at *1 (Pa. Super. Mar. 10, 2023) (unpublished memorandum) (citation, quotation marks, and brackets omitted).

On August 20, 1998, a jury convicted Appellant of First-Degree Murder, and, on August 28, 1998, the court sentenced him to life imprisonment without parole. This Court affirmed Appellant's judgment of sentence on December 3, 1999.[1] Appellant did not seek review from the Pennsylvania Supreme Court.

On December 6, 2000, Appellant timely filed the instant *pro se* PCRA petition, and the court appointed Alfred Howell, Esq., as PCRA counsel. Attorney Howell then filed a motion to withdraw*.* The PCRA court took no action on Attorney Howell's motion to withdraw. There was no subsequent docket activity, other than two *pro se* letters Appellant sent to the court, until November 2021.

On November 23, 2021, the Office of the Attorney General, while representing the Commonwealth in a federal *habeas* action filed by Appellant, informed the PCRA court of the outstanding PCRA petition. On January 4, 2022, Appellant filed a *pro se* amended petition, which the court ultimately dismissed on February 18, 2022.

---

[1] On direct appeal, this Court addressed several claims of trial counsel's ineffectiveness, as was permitted at the time. ***Commonwealth v. Joseph***, 141 EDA 1999 at 6-10 (Dec. 3, 1999).

On appeal, a panel of this Court concluded that that the PCRA court erred in denying Appellant's petition because Attorney Howell had abandoned him, which denied him effective assistance of PCRA counsel. **Joseph**, 2023 WL 2441945 at *3. Accordingly, we reversed and remanded for the appointment of new counsel to file either an amended petition or a **Turner**/**Finley** letter.[2] **Id.**

On April 25, 2023, the PCRA Court appointed Christine Rechner, Esq., who filed a **Turner**/**Finley** letter and a motion to withdraw as counsel on September 19, 2023. On October 4, 2023, the PCRA court issued a Rule 907 notice and granted Attorney Rechner's motion to withdraw. Appellant did not respond. The court dismissed Appellant's PCRA petition on November 8, 2023.

**B.**

Appellant timely filed a *pro se* notice of appeal. Both he and the PCRA court complied with Pa.R.A.P. 1925(b).[3]

Appellant *pro se* raises two issues for our review:

1. Whether [the PCRA court] erred in dismissing [] Appellant's First Post-Conviction Relief Act and *Pro Se* Amended PCRA *Nunc Pro Tunc* Where the original PCRA decision was delayed for over (21) [*sic*] years and forced [] Appellant who was abandoned to file the Amended PCRA Nunc Pro Tunc to develope [*sic*] the record?

---

[2]**Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[3]The PCRA court filed a Statement of Reasons directing this Court to its October 4, 2023 Opinion and Order. Statement of Reasons, 1/10/24, at 1 (unpaginated)

- 3 -

2. Whether this Common Pleas Court erred in dismissing the Appellant's first PCRA and Amended PCRA *Nunc Pro Tunc* without a hearing where there was newly[-]discovered facts evidence on the develpped [*sic*] record?

Appellant's Br. at 1 (some capitalization altered).

**C.**

Appellant first claims that the PCRA court erred in dismissing his petition because his original PCRA counsel, Attorney Howell, had abandoned him, delaying a decision on his PCRA by over 20 years. *Id.* Although we are deeply troubled that the Court of Common Pleas permitted a PCRA petition to languish for over 20 years, we have found no legal basis to conclude that this unreasonable delay is a basis to grant a PCRA petition. Moreover, and more importantly, Appellant has not addressed this issue in his brief beyond the Statement of Questions Involved. Accordingly, Appellant has waived this claim. *See*, *e.g.*, *Commonwealth v. Jones*, 815 A.2d 598, 604 n.3 (Pa. 2002) (finding claims raised in the Statement of Questions Involved but not pursued in the body of the brief waived); *Commonwealth v. Miller*, 721 A.2d 1121, 1124 (Pa. Super. 1998) (explaining "[w]hen issues are not properly raised and developed in briefs. . . a court will not consider the merits thereof.") (citations omitted).

**D.**

Appellant next asserts that the PCRA court erred when it dismissed his PCRA petition without a hearing. Appellant's Br. at 1. In his brief, Appellant references supposed after-discovered evidence of his alleged mental infirmities and a letter from his foster mother exposing the bias of his foster

father, a witness at trial. *Id.* at 22-40. He also purports to assert ineffective assistance of counsel claims, including that his trial counsel failed to both object to the admission of prior bad acts evidence and to recall Appellant to testify about his lack of defensive wounds. *Id.* However, the substantial defects in Appellant's brief preclude us from conducting meaningful appellate review.

Appellate briefs must materially conform to the requirements set forth in our Rules of Appellate Procedure, and we may quash or dismiss an appeal if the defect in the brief is substantial. *Commonwealth v. Adams*, 882 A.2d 496, 497 (Pa. Super. 2005); Pa.R.A.P. 2101. "[A]lthough this Court is willing to construe liberally materials filed by a *pro se* litigant, *pro se* status generally confers no special benefit upon an appellant." *Commonwealth v. Lyons*, 833 A.2d 245, 251–52 (Pa. Super. 2003).

"When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review[,] a Court will not consider the merits thereof." *Branch Banking and Trust v. Gesiorski*, 904 A.2d 939, 942-43 (Pa. Super. 2006) (citation omitted). *See also* Pa.R.A.P. 2111 (listing briefing requirements for appellate briefs) and Pa.R.A.P. 2119 (listing argument requirements for appellate briefs). It is axiomatic that the argument portion of an appellate brief must be developed with citations to the record and relevant authority. Pa.R.A.P 2119(a)-(c); *see also Commonwealth v. B.D.G.*, 959 A.2d 362, 371–72 (Pa. Super. 2008) (finding waiver where appellant failed to cite any pertinent authority to

support his argument). As this Court has made clear, we "will not act as counsel[.]" *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007). "We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument[.]" *Milby v. Pote*, 189 A.3d 1065, 1079 (Pa. Super. 2018).

Here, Appellant's argument section is substantially underdeveloped, and, thus, precludes meaningful appellate review. First, he has failed to address each issue raised under a separate heading as required by Rule 2119(a) and, instead, combines multiple different arguments of ineffective assistance of counsel and after-discovered evidence into one section. Furthermore, Appellant's argument section is substantially underdeveloped because he fails to provide citations to the record and fails to apply the law he has cited to the facts of this case in a meaningful and coherent manner as required by our Rules of Appellate Procedure and caselaw. *See* Pa.R.A.P. 2119(a); *B.D.G.*, 959 A.2d at 371–72. Appellant has, thus, not provided a cogent argument establishing how the trial court erred in dismissing his PCRA petition. Accordingly, Appellant's brief fatally impedes our review, and this claim is waived.[4]

_____

[4] Even if Appellant had not waived both claims, we would affirm the PCRA court's decision. We have reviewed the court's Opinion and Order analyzing the claims it could identify from Appellant's PCRA petition, and we discern no abuse of discretion. We would adopt the PCRA court's reasoning as our own. Appellant is directed to annex the Opinion and Order dated October 4, 2023 to all future filings.

Appellant has waived both of his claims. We, thus, affirm the dismissal of Appellant's PCRA petition.

Order affirmed.

Judge Beck joins the memorandum.

Judge McLaughlin concurs in result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/25/2024

*IN THE COURT OF COMMON PLEAS OF THE 22ND JUDICIAL DISTRICT*
*COMMONWEALTH OF PENNSYLVANIA*
*COUNTY OF WAYNE*

COMMONWEALTH OF
PENNSYLVANIA

VS.

LAURENSAU JOSEPH,
    Defendant

    NO. 92-1998-CR

2023 OCT -4 AH 9:32

---

## OPINION, ORDER, AND NOTICE OF INTENT TO DISMISS PURSUANT TO Pa. R. Crim. P. 907

---

Laurensau Joseph ("Defendant") was convicted by a jury of first-degree murder on August 20, 1998 and subsequently sentenced by this Court to life imprisonment. Defendant was represented at trial and sentencing by Robert N. Bryan, Esq. On direct appeal, Defendant was represented by William J. Parker, Esq. The Superior Court affirmed the judgment of sentence on December 3, 1999. On December 6, 2000, Defendant timely filed a *pro se* Motion for Post-Conviction Relief pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9545. On September 12, 2002, the Court appointed Alfred G. Howell, Esq. to represent Defendant. On November 7, 2002, the Court granted Attorney Howell's request for extension of time to file an amended PCRA petition. On December 23, 2002, Attorney Howell filed a "no merit" letter and a motion to withdraw as counsel. There was no further participation by Attorney Howell in the docket.

On January 5, 2022, Defendant filed a *pro se* Amended PCRA *Nunc Pro Tunc*. After issuing a notice of intent to dismiss and upon consideration of Defendant's letter in opposition thereto, the Court dismissed the PCRA Motion by Order dated February 18, 2022. Defendant

Page 1 of 14



appealed to the Pennsylvania Superior Court. On March 10, 2023, the Superior Court issued a memorandum decision remanding the case and instructing this Court to appoint PCRA counsel, who shall then file either an amended PCRA petition or a *Turner/Finley* "no merit" letter. On April 25, 2023, upon remittal of the record, this Court appointed Christine Rechner, Esq. as counsel for Defendant ("PCRA Counsel"). On September 19, 2023, PCRA Counsel filed a "no merit" letter and a Motion to Withdraw as Counsel with this Court.

<u>Motion to Withdraw as Counsel</u>

When counsel seeks to withdraw in post-conviction proceedings, the PCRA court must conduct an independent review of the record as a follow-up to counsel's "no-merit" letter. *Commonwealth v. Mosteller*, 633 A.2d 615, 617 (Pa. Super. 1993). The independent review necessary to secure a withdrawal request by counsel requires proof that:

1. PCRA counsel, in a "no-merit" letter, has detailed the nature and extent of her review;

2. PCRA counsel, in the "no-merit" letter, lists each issue the petitioner wishes to have reviewed;

3. PCRA counsel must explain, in the "no-merit" letter, why petitioner's issues are meritless;

4. The PCRA court must conduct its own independent review of the record; and

5. The PCRA court must agree with counsel that the petition is meritless.

*Id.*

After reviewing the "no-merit" letter, it has been determined that PCRA Counsel has complied with the first three (3) requirements. This Court's remaining inquiry, therefore, must focus on the remaining two (2) requirements.

In his December 6, 2000 Motion, Defendant indicated that he is eligible for relief under the PCRA due to:

> (i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
>
> ...
>
> (v) A violation of the provisions of the constitution, law or treaties of the United States which would require the granting of federal habeas corpus relief to a state prisoner.[1]
>
> (vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

From this Court's review of the PCRA Motion, Defendant specifically raised the following issues:

- A tan leather coat that Defendant was allegedly wearing at the time of the incident was unavailable at the time of trial and was never addressed to the jury. Defendant added, "My lawyer was incompetant [sic]";

- A photo album in the possession of the state police was unavailable at the time of trial. Defendant wrote, "It contains (4) four photos of damages done to my car. This was the reason for carrying a gun.";

- Nathaniel Williams was a hostile witness. To support this claim, Defendant attached a copy of a letter from Denise Williams to Defendant wherein she stated that Nathaniel believed she was having an affair with Defendant.

---

[1] This section has been deleted and does not appear in the current version of the Act. *See* 42 Pa.C.S.A. § 9543(2).

Defendant alleged that exculpatory evidence unavailable at the time of trial had subsequently become available and would have affected the outcome of the trial if it had been introduced. Defendant listed the following: (1) hostile witness; (2) missing coat; (3) photo album; (4) intent to harm; and (5) not testing for fingerprints.

Defendant also raised numerous allegations in subsequent filings with the Court. PCRA Counsel numbered the issues and addressed them individually in her "no-merit" letter. According to PCRA Counsel, Defendant has also consistently raised claims of ineffective assistance of counsel as it relates to matters identified in his original PCRA Motion. This Court will accordingly address all of Defendant's claims.

I.    Constitutional Violation – Undermining Truth-Determining Process

Defendant alleges that he is eligible for relief because there existed a violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

Defendant argues that Nathaniel Williams was a hostile witness due to the contents of the letter from Denise Williams that Defendant attached to the PCRA Motion. Ms. Williams alleged that Mr. Williams believed she had an affair with Defendant. Defendant also submitted a letter from Nathaniel Williams to Defendant regarding the rumor and inquiring whether it was true.

The Williamses operated a group home in New Jersey that had housed both Defendant and the victim. Trial Transcript, 8/17/98 – 8/20/98 ("Tr.") 259. At one time, Defendant and the victim lived with the Williamses after the Williamses moved to Pennsylvania. Tr. 260. At the time of the murder, Defendant worked for Mr. Williams. Tr. 262. At trial, Mr. Williams was called to testify by the Commonwealth. Mr. Williams recounted the events following the shooting. He

drove Defendant to the police station. Tr. 271. Mr. Williams provided a statement to the police. Tr. 276. Mr. Williams stated that Defendant admitted to shooting the victim. Tr. 277. According to Mr. Williams' statement, Defendant told him that he was threatening the victim with the gun, that the first shot was accidental and then he shot the victim in the head. Tr. 278. Mr. Williams was cross-examined by defense counsel. Defendant testified that he did not intentionally fire the first shot at the victim. Tr. 447. Defendant testified that he shot the victim a second time, in the forehead. Tr. 454.

In his PCRA Motion, Defendant avers that Mr. Williams had motive to testify against Defendant's interests, e.g.., believing Defendant was having an affair with his wife, but Defendant fails to identify any testimony that was intentionally false. Therefore, Defendant's argument with respect to Mr. Williams' testimony is without merit.

## II.    Subsequently Available Exculpatory Evidence

Defendant alleges in his PCRA Motion that the unavailability at the time of trial of exculpatory evidence that has subsequently become available would have changed the outcome of the trial if it had been introduced. See 42 Pa.C.S.A. § 9543(a)(2)(vi). Under this provision of the PCRA, a petitioner bears the burden to show by a preponderance of the evidence that exculpatory evidence (1) was discovered after trial and could not have been obtained earlier through due diligence; (2) is not cumulative; (3) is not being used solely to impeach credibility; and (4) would likely compel a different verdict. *Commonwealth v. D'Amato,* 856 A.2d 806, 823 (Pa. 2004).

### a.) *the leather coat*

First, Defendant averred that a tan leather coat he was allegedly wearing at the time of the shooting constitutes previously unavailable exculpatory evidence, and he takes issue that his trial

counsel, Attorney Bryan, never presented this to the jury.[2] Defendant cited to the trial transcript in his PCRA Motion, specifically testimony by Trooper Andress and a side-bar conversation with his counsel. At trial, the Commonwealth called Trooper Russel Andress to rebut Defendant's self-defense claim. Defendant had testified that after he shot the victim the first time, the victim pushed a table toward Defendant and attacked him with it. Tr. 453. The testimony by Trooper Andress when questioned by the Commonwealth was as follows:

Q: Trooper Andress, at the time that you arrested the defendant on the early morning hours of February 24, 1998, did you, as a matter of procedure, check him for bruises or injuries of any kind?

A: Yes, sir.

Q: And why do you do that?

A: We look for other wounds or any other type of markings on a person's body.

Q: And did you particularly look at his arms and areas where maybe he would have fended off an attack by a table?

A: Yes, sir.

Q: Did you see any?

A: No, sir.

Tr. 526-527.

At side-bar, Attorney Bryan informed the Court that during Trooper Andress' testimony Defendant told him that he had a coat on. Tr. 528. Attorney Bryan requested permission to recall Defendant to testify that he had his coat on. Tr. 528. The Court stated it would permit Attorney Bryan to do so the following day as the Court was ready to recess. Tr. 529. The next day, however, the parties proceeded to closing arguments without any testimony regarding the coat.

---

[2] The latter is discussed herein under III. Ineffective Assistance of Counsel.

In Defendant's PCRA Motion, he stated that the coat was "submitted to trooper Mark E. Filarsky." Trooper Filarsky of the Pennsylvania State Police testified at trial and was the officer assigned to put together all the search warrants for the case. Tr. 354. Trooper Filarsky was at the barracks when Defendant gave his statement. Tr. 356. Trooper Filarsky's testimony does not contain any mention of a coat.

Defendant's cousin, Ketura Odestin, testified that Defendant came to her house in New Jersey on Monday night[3] and left his clothes and bullets there. Tr. 182, 188. Trooper Sean Doran of the Pennsylvania State Police testified that on February 25th he interviewed Ms. Odestin and collected Defendant's clothing and bullets from the Roselle, New Jersey police department and transported them the Honesdale police barracks to be secured as evidence were. Tr. 196-198. The clothing items were a pair of white socks, Guess blue jeans, Nike sneakers and a polo. Tr. 197-198. A coat was not mentioned as one of Defendant's clothing items collected by either police department.

Except for the side-bar conversation, the coat was never mentioned at trial, and there was no testimony that it was ever in police custody. However, the coat is not after-discovered evidence because Defendant knew about it at trial given the side-bar conversation with his attorney. Further, it would not likely have compelled a different verdict. Its only potential use would have been on surrebuttal following Trooper Andress' testimony that he did not see any bruising or signs of injury on Defendant. It may have provided a potential explanation as to why Trooper Andress did not observe any bruising or injuries on Defendant, despite Defendant's testimony that the victim "attacked" him with a table. Even in the absence of the coat, Defendant had the opportunity to present his self-defense claim to the jury and did so through his own testimony.

---

[3] This refers to the night of Monday, February 23, 1998.

### b.) *the photo album*

Defendant averred in his PCRA Motion that photographs in the possession of the state police constituted exculpatory evidence because they depict damage to his car and that was the reason Defendant was carrying a gun. At trial, Trooper George P. Schochin of the Pennsylvania State Police identified three photographs of Defendant's vehicle, a red Dodge Shadow, that were taken at the Honesdale police barracks. Tr. 111-112. Trooper Schochin also identified a photograph he took depicting two vehicles in the driveway outside the victim's residence where the shooting occurred. Tr. 113. These photographs were admitted and published to the jury at trial.

In addition, the jury heard testimony from Defendant about an altercation between himself and the victim two days before the shooting. Tr. 428. In addition to testifying that he believed the victim stole his herringbone necklace, Defendant suspected the victim of breaking the windshield wipers of his car and putting a bolt in the tire. Tr. 429. Defendant testified about damage to his vehicle; therefore, there was no need for additional evidence. Any after-discovered photographs of Defendant's vehicle for the purpose asserted by Defendant – the reason for his carrying a gun – are inconsequential and would not have compelled a different verdict.

### III. Ineffective Assistance of Counsel

Defendant asserted in his PCRA Motion that trial counsel was incompetent. The Court presumes the reasoning for Defendant's assertion is that trial counsel failed to mention and introduce the leather coat despite requesting the Court's permission to do so. A PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of

guilt or innocence could have taken place." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (quoting 42 Pa.C.S. § 9543(a)(2)(ii)). To prove counsel ineffective, the petitioner must show all of the following: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. *See id.* (citing *Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa. 2010)).

Defendant did not suffer actual prejudice as a result of Attorney Bryan's failure to mention the coat. When analyzing this same claim by Defendant, the Superior Court previously found that cross-examination (of Trooper Andress) would not have served to benefit Defendant given his prior testimony that the victim was not threatening him with the table when the second shot was fired. *See* No. 141 EDA 1999, Memorandum 12/3/99, p.10. Specifically, Defendant testified that he blocked the table with arms, the table fell, and then he shot the victim. Tr. 453. Therefore, Defendant has not met his burden of showing that trial counsel was ineffective for failing to mention or introduce Defendant's coat at trial.

IV. <u>Subsequently Raised Claims</u>

As PCRA counsel identifies in her "no merit" letter, Defendant has raised the following additional issues in subsequent filings to the Court including his *pro se* 2022 PCRA Petition:

Defendant argued that the living room where he fired the second gunshot at victim was not tested for fingerprints and doing so would have proved Defendant acted in self-defense by shooting victim a second time. Defendant argued the machete brandished by the victim should also have been tested for fingerprints. Upon review of the record, it is unclear how the testing of fingerprints where the second shot was fired would have proved that Defendant shot the victim a second time in self-defense. The basis for Defendant's self-defense claim at trial was that the victim was threatening him with table. As previously mentioned, Defendant testified that he shot the victim

*after* he blocked the table. Tr. 453. The Court also does not see how testing the machete for fingerprints would have made a difference in the case. The jury heard Defendant's testimony that the victim was holding the machete prior to and during the first shot by Defendant.

Defendant argued trial counsel was ineffective for: failing to object to prior bad act testimony as it relates to a "choke hold" testified to by Nathaniel Williams;[4] deciding to stipulate to the victim's prior bad acts causing the jurors to not hear specific behaviors of the victim; failing to raise the defense of mental infirmity, specifically Defendant was depressed because of the victim's bad behaviors towards him; refusing and/or failing to file a direct appeal, which ultimately was provided to Defendant *nunc pro tunc*; and failing to object to certain evidence presented by the Commonwealth.

As was proper at the time, the Superior Court already addressed a series of Defendant's allegations of ineffective assistance by his trial counsel on direct appeal, including Defendant's assertion that trial counsel was ineffective for failing to request a mental evaluation of Defendant. *See* No. 141 EDA 1999, Memorandum 12/3/99, p.8-9. The Superior Court found this claim meritless and credited the determination of the Honorable Robert J. Conway, the trial judge, that Defendant was able to comprehend his position as one accused of an offense and was also able to cooperate with his counsel in making a rational defense. *See* No. 141 EDA 1999, Memorandum 12/3/99, p.9.

Defendant argues that appellate counsel, Attorney Parker, was ineffective for not making an adequate examination before seeking to withdraw from representation of Defendant. On direct appeal, the Superior Court found that with his third motion to withdraw and *Anders* brief filing,

---

[4] The Court reviewed Mr. Williams' testimony and found no mention of a "choke hold" by Defendant. When questioned about the relationship he observed between Defendant and the victim, Mr. Williams stated: "Other than one occasion where there was an argument that ensued in my home, that I interceded to say that it should stop; other than that, for the most part, I saw them getting along well." Tr. 261.

Attorney Parker had complied with the requirements. *See* No. 141 EDA 1999, Memorandum 12/3/99, p.4. The Superior Court permitted Attorney Parker to withdraw after independent review of the appeal and its determination that the appeal was wholly frivolous. *See* No. 141 EDA 1999, Memorandum 12/3/99, p.10. Defendant's subsequent claims alleging ineffective assistance of counsel without arguable merit.

Defendant claimed Denise Williams, who testified at trial, stole Defendant's money from his Wayne Bank account and used the money to purchase crack cocaine, thus providing her with a reason to lie during her testimony. Defendant also claimed that Earl Lucas, who testified at trial, assisted Ms. Williams in the theft of funds from the Wayne Bank account and smoked crack cocaine with her. In her investigation of this claim, PCRA Counsel reviewed a letter from Wayne Bank dated April 11, 2008 provided by Defendant indicating there were no records remaining regarding his old checking account. There was no testimony related to Defendant's allegations presented at trial. Assuming, *arguendo*, Defendant was able to prove this alleged theft of funds from his Wayne Bank account by Ms. Williams and Mr. Lucas, its only purpose would be to impeach the credibility of their testimonies.

Defendant claimed that James Bryant had a reason to provide false testimony because he received a deal from the district attorney. Mr. Bryant was called by the Commonwealth to testify because he knew Defendant and the victim, and he had discovered the victim's body. Tr. 58-59, 70. Further, Attorney Bryan on cross-examination alluded to Mr. Bryant having motive to testify – that he would get out of jail early for doing so. Tr. 82. Mr. Bryant denied this. Tr. 82. Defendant's claim is without merit and he was not prejudiced because Attorney Bryan raised the possibility of a deal in his questioning, which was heard by the jury as the judges of credibility.

Defendant claimed Attorney Bryan failed to utilize the victim's criminal history during the trial. This claim is without merit. There is no record of victim's criminal history that was presented at trial; however, the victim's violent tendencies and behaviors were raised by multiple witnesses. On cross-examination of James Bryant, Attorney Bryan questioned him regarding a physical fight he had with the victim where the police were called. Tr. 79. Attorney Bryan called Lt. Thomas Matthews to testify because he had responded to the fight between Mr. Bryant and the victim. Tr. 79, 394-395. Lt. Matthews testified that the victim had a reputation in the community for being a violent person. Tr. 396. The defense also called Keith Rose and Denise Williams who testified regarding the victim's reputation for violence. Tr. 406, 409.

Lastly, Defendant claimed the statement he gave to the state police was given under duress due to his lack of sleep. The Superior Court previously addressed a similar claim related to Defendant's statement to police – that his state of mind at the time was terribly confused. Upon review of the record, the Superior Court on direct appeal concluded that Defendant's statement was voluntary given the totality of the circumstances. *See* No. 141 EDA 1999, Memorandum 12/3/99, p.8.

## Conclusion

Defendant's PCRA Petition is without merit. Defendant, therefore, is not entitled to post-conviction relief. Accordingly, this Court issues the following order.

## ORDER

**AND NOW**, to wit, this ___ day of October, 2023, after an independent review of the record by this Court, it is hereby **ORDERED** that the Motion to Withdraw as Counsel by Christine Rechner, Esq. is **GRANTED**.

BY THE COURT

_____
JANINE EDWARDS
PRESIDENT JUDGE
22ND JUDICIAL DISTRICT

cc:  Christopher Schmidt, Esq. (c/o Attorney General)
     Joseph Laurensau (#DS-8331 c/o SCI Greene), via certified mail return receipt requested
     Christine Rechner, Esq.
     Court Administration

CR

Served 10/4/23 CLS

*IN THE COURT OF COMMON PLEAS OF THE 22ND JUDICIAL DISTRICT*
*COMMONWEALTH OF PENNSYLVANIA*
*COUNTY OF WAYNE*

COMMONWEALTH OF
PENNSYLVANIA

    VS.

LAURENSAU JOSEPH,
        Defendant        :      NO. 92-1998-CR

---

## NOTICE OF INTENT TO DISMISS
## PURSUANT TO Pa. R. Crim. P. 907

---

**AND NOW**, to wit, this ___4___ day of October, 2023, Defendant, Laurensau Joseph, is

hereby **ADVISED** of his right to respond in writing to this proposed dismissal within twenty (20)

days of the date of this Notice.


BY THE COURT

_____
JANINE EDWARDS
PRESIDENT JUDGE
22ND JUDICIAL DISTRICT


cc:    Christopher Schmidt, Esq. (c/o Attorney General)
       Joseph Laurensau (#DS-8331 c/o SCI Greene), via certified mail return receipt requested
       Christine Rechner, Esq.
       Court Administration
CR